**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK F. CIPOLLA, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| ALTRIA GROUP, INC., HOWARD A. WILLARD III, and WILLIAM F. GIFFORD, JR., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Patrick F. Cipolla ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Altria Group, Inc. ("Altria" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Altria; and (c) review of other publicly available information concerning Altria.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Altria securities between October 25, 2018 and September 24, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Altria was founded in 1919 and is headquartered in Richmond, Virginia.  The Company, through its subsidiaries, manufactures and sells cigarettes, smokeless products, and wine in the United States.

3.      Altria offers, among other products and services, cigarettes, primarily under the Marlboro brand; cigars, principally under the Black & Mild brand; and moist smokeless tobacco products under the Copenhagen, Skoal, Red Seal, and Husky brands.  The Company sells its tobacco products primarily to wholesalers, including distributors; large retail organizations, such as chain stores; and the armed services.

4.      On December 20, 2018, during pre-market hours, Altria issued a press release announcing that it had signed and closed a $12.8 billion investment in JUUL Labs, Inc.

("JUUL"), the purported U.S. leader in electronic vapor (colloquially called "e-vapor") products, including e- cigarettes (the "December 2018 Press Release"). According to the December 2018 Press Release, the service agreements related to the transaction would accelerate JUUL's mission to switch adult smokers to e-vapor products.  Altria's investment represented a 35% economic interest in JUUL, valuing the company at $38 billion, with JUUL purportedly remaining fully independent.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Altria had conducted insufficient due diligence into JUUL prior to the Company's $12.8 billion investment, or 35% stake, in JUUL; (2) that Altria consequently failed to inform investors, or account for, material risks associated with JUUL's products and marketing practices, and the true value of JUUL and its products; (3) that, as a result of the foregoing, as well as mounting public scrutiny, negative publicity, and governmental pressure on e-vapor products and on JUUL, Altria's investment in JUUL was reasonably likely to have a material negative impact on the Company's reputation and operations; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      Following Altria's multi-billion dollar investment into JUUL, e-vapor products and JUUL increasingly became the subject of public and regulatory scrutiny throughout the country. Mounting skepticism, fear, and negative publicity in the media regarding e-cigarettes' safety led to increased scrutiny by government authorities into vaping products, and municipalities throughout the country began tightening sales practices related to those products.

7.     For example, on April 3, 2019, the U.S. Food and Drug Administration ("FDA") announced its investigation into nearly three dozen cases of people suffering from seizures after "vaping" (the act of consuming e-vapor products through inhalation).  Between 2010 and 2019, the FDA said it received thirty-five reports of people, especially children and young adults, experiencing seizures after using e-cigarettes.

8.     On this news, Altria's stock price fell $2.71 per share, or 4.78%, to close at $53.98 per share on April 3, 2019.

9.     Then, on August 29, 2019, the *Wall Street Journal* reported that the U.S. Federal Trade Commission ("FTC") was investigating whether JUUL used influencers and other marketing practices to appeal e-cigarettes to minors.

10.     On this news, Altria's stock price fell $1.60 per share, or 3.49%, to close at $44.25 per share on August 29, 2019.

11.     Additionally, on August 30, 2019, both the FDA and the Centers for Disease Control and Prevention ("CDC") announced that they were collaborating to investigate e-cigarette related cases of illnesses and "working tirelessly to investigate the distressing incidents of severe respiratory disease associated with use of e-cigarette products."

12.     On this news, Altria's stock price fell an additional $0.51 per share, or 1.15%, to close at $43.74 per share on August 30, 2019—a total loss of $2.11 per share, or 4.6%, since closing at $45.85 per share two trading days earlier on August 28, 2019.

13.     On September 11, 2019, news sources reported that the administration of U.S. President Donald Trump was preparing a ban on flavored e-cigarettes as federal agencies probed an outbreak of a lung problem that killed at least six people and reportedly led to the sickness of

hundreds of others.  President Trump and U.S. Health Secretary Alex Azar reportedly both confirmed that a ban is possible after the vaping issues are investigated.

14.     On September 12, 2019, during after-market hours, *Reuters* reported that, "[w]ithin weeks, New Jersey could become the latest state to restrict e-cigarette use, with the governor on Thursday launching a task force to find ways to curb vaping, linked by U.S. health officials to hundreds of respiratory illnesses and a half-dozen deaths."  Additionally, that same day, the CDC reported that as of September 11, 2019, 380 confirmed cases, and probably cases of lung disease associated with vaping, had been reported by thirty-six states and the U.S. Virgin Islands, with six total deaths confirmed in six states.

15.     On this news, Altria's stock price fell $2.45 per share, or 5.51%, to close at $42.01 per share on September 13, 2019.

16.     On September 23, 2019, during after-market hours, news sources began reporting that federal prosecutors in California were conducting a criminal probe into JUUL.

17.     Finally, on September 25, 2019, Altria issued a press release announcing that Philip Morris had called off discussions of a $200 billion merger with Altria due to scrutiny of the vaping industry and the Company's 35% stake in market leader JUUL, which had announced the same day that it was the subject of another federal investigation.  JUUL also announced its CEO would step down and the firm would stop all advertising in the U.S.

18.     On this news, Altria's stock price fell an additional $0.17 per share, or 0.42%, to close at $40.56 per share on September 25, 2019—a total loss of $0.32 per share, or 0.78%, since closing at $40.88 per share two trading days earlier on September 23, 2019.

19.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

20.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

21.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

22.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

23.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

24.     Plaintiff Patrick F. Cipolla, as set forth in the accompanying certification, incorporated by reference herein, purchased Altria securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

25.     Defendant Altria is incorporated under the laws of Virginia with its principal executive offices located in Richmond, Virginia. Altria's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "MO."

26.     Defendant Howard A. Willard III ("Willard") was, at all relevant times, the Chief Executive Officer ("CEO") and Chairman of the Board of Directors of the Company.

27.     Defendant William F. Gifford, Jr. ("Gifford") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company.

28.     Defendants Willard and Gifford (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

29.     Altria was founded in 1919 and is headquartered in Richmond, Virginia.  The Company, through its subsidiaries, manufactures and sells cigarettes, smokeless products, and wine in the United States.

30.     Altria offers, among other products and services, cigarettes, primarily under the Marlboro brand; cigars, principally under the Black & Mild brand; and moist smokeless tobacco products under the Copenhagen, Skoal, Red Seal, and Husky brands.  The Company sells its tobacco products primarily to wholesalers, including distributors; large retail organizations, such as chain stores; and the armed services.

**Materially False and Misleading
Statements Issued During the Class Period**

31.     The Class Period begins on October 25, 2018. On that day, the Company announced its third quarter 2018 financial results in a press release, in which it announced actions to address underage e-vapor use. The press release stated, in relevant part:

> "Altria delivered excellent third-quarter adjusted diluted earnings per share growth of 20% and continued to return large amounts of cash to our shareholders. Our tobacco businesses are successfully executing against their strategies, while making strategic investments to drive long-term success," said Howard Willard, Altria's Chairman and Chief Executive Officer. "We believe our year-to-date performance positions us well to deliver on our full-year plans. As a result, we are tightening our guidance range to $3.95 to $4.03, representing a growth rate of 16.5% to 19%."

* * *

**FDA Activity**

- In September, the U.S. Food and Drug Administration (FDA) announced a number of additional steps to address underage use of e-vapor products. The FDA also asked several companies, including Altria, to provide plans to address underage use of e-vapor products. Altria welcomed FDA's action and recently met with FDA Commissioner Gottlieb to discuss actions that could be taken.

- Today, Altria announces the following actions, which are included in Altria's response letter to the FDA posted at altria.com:

  - Nu Mark will remove from the market *MarkTen* Elite and *Apex* by *MarkTen* pod-based products until these products receive a market order from the FDA or the youth issue is otherwise addressed;

  - For our remaining *MarkTen* and *Green Smoke* cig-a-like products, Nu Mark will sell only tobacco, menthol and mint varieties. Nu Mark will

CLASS ACTION COMPLAINT
7

> discontinue the sale of all other flavor variants of our cig-a-like products until these products receive a market order from the FDA or the youth issue is otherwise addressed; and

- Altria will support federal legislation to establish 21 as the minimum age to purchase any tobacco product.

32. On December 20, 2018, Altria announced that it had signed and closed its $12.8 billion investment in JUUL, the purported U.S. leader in e-vapor products, including e-cigarettes. According to the December 2018 Press Release, "[t]he service agreements w[ould] accelerate JUUL's mission to switch adult smokers to e-vapor products[,]" thereby presumably increasing JUUL's sales and the value of Altria's investment. Additionally, the December 2018 Press Release highlighted that "Altria's investment represents a 35% economic interest in JUUL, valuing the company at $38 billion."

33. The December 2018 Press Release also quoted Defendant Willard, who touted Altria's investment in JUUL as the biggest in the Company's history, and a move that the Company made in an effort to promote products that reduced harm, stating, in relevant part:

> We are taking significant action to prepare for a future where adult smokers overwhelmingly choose non-combustible products over cigarettes by investing $12.8 billion in JUUL, a world leader in switching adult smokers . . . . We have long said that providing adult smokers with superior, satisfying products *with the potential to reduce harm* is the best way to achieve tobacco harm reduction. Through JUUL, we are making the biggest investment in our history toward that goal. *We strongly believe that working with JUUL to accelerate its mission will have long-term benefits for adult smokers and our shareholders.*
>
> * * *
>
> This is a unique and compelling opportunity to invest in an extraordinary company, the fastest growing in the U.S. e-vapor category. We are excited to support JUUL's highly-talented team and offer our best-in- class services to build on their tremendous success[.]

(Emphases added.)

34.     The December 2018 Press Release also quoted JUUL's CEO, Kevin Burns, who

stated, in relevant part:

> *Altria's investment sends a very clear message that JUUL's technology has given us a truly historic opportunity to improve the lives of the world's one billion adult cigarette smokers* . . . . This investment and the service agreements will accelerate our mission to increase the number of adult smokers who switch from combustible cigarettes to JUUL devices.

(Emphasis added.)

35.     Additionally, the December 2018 Press Release touted multiple purported benefits

associated with Altria's investment in JUUL, which supposedly aligned with Altria's

commitment to prevent harm associated with tobacco products, stating, in relevant part:

> An Extraordinary E-vapor Company with a Strong Product Pipeline
>
> Fueled by its unique and innovative Silicon Valley approach to product development and founded by former smokers, JUUL has rapidly built an industry-leading position by satisfying adult tobacco consumers with its differentiated e-vapor products.
>
> JUUL has quickly grown both revenue and share, and today represents approximately 30% of the total U.S. e-vapor category.[] JUUL has a deep innovation pipeline and currently operates in eight countries, with rapid international expansion plans.
>
> * * *
>
> Advances Altria's Long-Term Tobacco Harm Reduction Goal
>
> In 2000, Altria became the first and only company in the industry to support FDA regulation of tobacco products, an important step to providing accurate and scientifically-grounded communications about reduced-risk products to smokers. Today, the FDA has regulatory authority over all tobacco products, and the FDA distinguishes between the harm associated with combustible versus non-combustible products.
>
> Altria will participate in the e-vapor category only through JUUL. The investment complements Altria's non-combustible offerings in smokeless and heat-not-burn, upon FDA authorization of *IQOS*.

36.     Finally, the December 2018 Press Release attempted to assure investors that

Altria's investment in JUUL was made with an ongoing commitment to prevent underage

tobacco consumption, promising that Altria and JUUL would work together to prevent underage use of JUUL's products.  Specifically, the December 2018 Press Release stated, in relevant part:

<u>Commitment to Underage Tobacco Prevention</u>

Altria and JUUL are committed to preventing youth from using any tobacco products. As recent studies have made clear, youth vaping is a serious problem, which both Altria and JUUL are committed to solve. As JUUL previously said, "Our intent was never to have youth use JUUL products. But intent is not enough, the numbers are what matter, and the numbers tell us underage use of e-cigarette products is a problem."

As a result, JUUL recently began implementing a number of actions to prevent underage vaping, including stopping the sales of flavored products to retail stores, enhancing age-verification for its online sales, eliminating social media accounts and developing further technology solutions.

JUUL believes that it cannot fulfill its mission to provide the world's one billion adult smokers with a true alternative to combustible cigarettes if youth use continues unabated. Together, JUUL and Altria will work to prevent youth usage through their announced initiatives, further technological developments and increased advocacy for raising the minimum age of purchase for all tobacco products to 21.

37.     On February 26, 2019, Altria filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 10-K").  The 2018 10-K downplayed FDA concern with Altria's investment into JUUL while simultaneously touting Altria's continued commitment to preventing underage vaping. For example, while discussing a letter received from the FDA on that point, Altria asserted to investors that the Company had assured the FDA of its continuing commitment to prevent underage vaping and would continue discussions with the FDA moving forward. Specifically, the 2018 10-K stated, in relevant part:

The FDA announced in September 2018 that it is using its regulatory authority to address underage access and use of e-vapor products. As part of this effort, the FDA issued letters to manufacturers of certain e-vapor products, including Nu Mark and JUUL, requiring them to (1) discuss with the FDA the steps each manufacturer intends to take to address youth access and use of its e-vapor

products and (2) within 60 days provide a detailed written plan to address underage access and use.

In October 2018, Altria responded to the FDA's request for a written plan setting forth the actions it was taking to address underage access and met with the FDA . . . . Later in December, Altria purchased, through a wholly owned subsidiary, a 35% economic interest in JUUL. Following the announcement of this investment, Altria requested a meeting with the FDA to discuss the transaction and its ongoing support for underage tobacco prevention. In February 2018 [*sic*], the FDA sent Altria a letter expressing concern about this investment given the rise in underage use of e- vapor products and issued a statement indicating that, if the increased trend in underage use of e-vapor products does not reverse, the FDA may unilaterally take action to address the trend. Altria responded by reaffirming its ongoing and long- standing investment in underage tobacco prevention efforts. For example, Altria is advocating raising the minimum legal age to purchase all tobacco products to 21 at the federal and state levels to further address underage tobacco use. Altria will meet with the FDA to continue discussing underage e-vapor use.

38.     Additionally, the 2018 10-K contained merely generic, boilerplate representations regarding the risk that Altria's expected benefits from its investment in JUUL may fail to materialize in the manner or time expected, if at all. For example, the 2018 10-K stated, in relevant part:

[T]he expected benefits of the JUUL transaction, such as any equity earnings and receipt of cash dividends, may not materialize in the expected manner or timeframe or at all, including due to the risks encountered by JUUL in its business, such as operational risks and regulatory risks at the international, federal and state levels, including actions by the FDA; unanticipated impacts on JUUL's relationships with employees, customers, suppliers and other third parties; potential disruptions to JUUL's management or current or future plans and operations due to the JUUL transaction; or domestic or international litigation developments, investigations, or otherwise . . . . Failure to realize the expected benefits of our JUUL investment could adversely affect the value of the investment. [. . .] [I]f a qualitative assessment of impairment of our JUUL investment were to indicate that its fair value is less than its carrying value, the investment would be written down to its fair value, which could have a material adverse effect on Altria's consolidated financial position or earnings.

The foregoing risk warning was plainly a generic catch-all provision not tailored to Altria's actual known legal risks.

39.     Appended as exhibits to the 2018 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") wherein the Individual Defendants certified that "the [2018 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "the information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

40.     The above statements identified in ¶¶ 31-39 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Altria had conducted insufficient due diligence into JUUL prior to the Company's $12.8 billion investment, or 35% stake, in JUUL; (2) that Altria consequently failed to inform investors, or account for, material risks associated with JUUL's products and marketing practices, and the true value of JUUL and its products; (3) that, as a result of the foregoing, as well as mounting public scrutiny, negative publicity, and governmental pressure on e-vapor products and on JUUL, Altria's investment in JUUL was reasonably likely to have a material negative impact on the Company's reputation and operations; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## The Truth Begins to Emerge

41.     Following Altria's multi-billion dollar investment into JUUL, e-vapor products and JUUL increasingly became the subject of scrutiny by government authorities throughout the country.  Mounting skepticism, fear, and negative publicity in the media regarding e-cigarettes' safety led to increased scrutiny by government authorities into vaping products, and municipalities throughout the country began tightening sales practices related to those products.

42. For example, on April 3, 2019, the FDA announced its investigation into nearly three dozen cases of people suffering from seizures after vaping. Between 2010 and 2019, the FDA said it received thirty-five reports of people, especially children and young adults, experiencing seizures after using e-cigarettes.

43. On this news, Altria's stock price fell $2.71 per share, or 4.78%, to close at $53.98 per share on April 3, 2019.

44. Nevertheless, Altria continued to tout the benefits of the Company's investment in JUUL. On April 25, 2019, Altria issued a press release announcing its financial and operating results for the first quarter of 2019 (the "1Q19 Press Release"). The 1Q19 Press Release quoted Defendant Willard, who touted Altria's recent investments, which included JUUL, as factors that would accelerate Altria's growth and long-term success, stating, in relevant part:

> After taking steps to position Altria for long-term success at the end of 2018, we entered 2019 with an evolved business platform that includes our strong core tobacco businesses and new strategic investments with tremendous potential for growth . . . . We believe we've made significant progress in the first quarter on key initiatives to realize the potential of our evolved business platform.

45. The 1Q19 Press Release also asserted that Altria's investment into JUUL had included, among other factors, an evaluation of the following:

> [T]he possibility that the expected benefits of the transaction may not materialize in the expected manner or timeframe, if at all; the potential inaccuracy of the financial projections (including projections relating to JUUL's domestic growth and international expansion); prevailing economic, market, regulatory or business conditions, or changes in such conditions, negatively affecting the parties . . . [and] the fact that Altria's reported earnings, financial position and expected use of equity accounting and any future dividends paid by JUUL on shares owned by Altria may be adversely affected by tax and other factors, including the risks encountered (including regulatory and litigation risks) and decisions made by JUUL in its business[.]

46. That same day, Altria filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2019

(the "1Q19 10-Q").  The 1Q19 10-Q briefly discussed ongoing litigation related to the dangers of e- vapor products, without going into detail, and while assuaging investors that Altria was already preparing responses to such lawsuits.  Specifically, the 1Q19 10-Q stated, in relevant part:

> *E-vapor Litigation*
>
> In April 2019, Altria, PM USA and JUUL were named as defendants in a tobacco and health class action lawsuit filed in the United States District Court for the Middle District of Florida. The lawsuit involves JUUL e-vapor products and proposes various classes of plaintiffs. The theories of recovery include: violation of RICO; fraud; failure to warn; design defect; negligence; unjust enrichment and deceptive and unfair trade practices. Plaintiffs seek various forms of relief including compensatory and punitive damages. Altria and PM USA are preparing their responses to the lawsuit.

47.     The 1Q19 10-Q also contained substantively the same representations as quoted in ¶¶ 37-38 above, except that the 1Q19 10-Q clarified that Altria had received the FDA letter at issue in February 2019, rather than February 2018, and excluded any representation that Altria would continue discussions with the FDA.

48.     Appended as exhibits to the 1Q19 10-Q were signed SOX certifications wherein the Individual Defendants certified that "the [1Q19 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "the information contained in the [1Q19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

49.     The above statements identified in ¶¶ 41-48 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Altria had conducted insufficient due diligence into JUUL prior to the Company's $12.8 billion investment, or 35% stake, in JUUL; (2) that Altria consequently failed to inform investors, or

account for, material risks associated with JUUL's products and marketing practices, and the true value of JUUL and its products; (3) that, as a result of the foregoing, as well as mounting public scrutiny, negative publicity, and governmental pressure on e-vapor products and on JUUL, Altria's investment in JUUL was reasonably likely to have a material negative impact on the Company's reputation and operations; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

50.     The Company continued to tout the purported benefits of its investment in JUUL. On July 30, 2019, Altria issued a press release announcing its financial and operating results for the second quarter of 2019 (the "2Q19 Press Release"). The 2Q19 Press Release quoted Defendant Willard, who continued to describe the JUUL transaction as a factor that would contribute to Altria's future growth and success, stating, in relevant part:

> Altria delivered excellent second quarter adjusted diluted earnings per share growth of nearly 9%, driven by our core tobacco businesses . . . . We've maintained our focus on the adult tobacco consumer and believe that with our leading premium tobacco brands, U.S. commercialization rights to IQOS, investment in JUUL and pending transaction for on!, we are best positioned among tobacco peers to lead through a dynamic time in the U.S.

51.     The 2Q19 Press Release contained merely generic, boilerplate representations concerning risk factors related to Altria's investment in JUUL, including, in relevant part:

> [T]he risks generally related to our investments in JUUL and Cronos, including our inability to realize the expected benefits of our investments in the expected time frames, or at all, due to the risks encountered by our investees in their businesses, such as operational, compliance and regulatory risks at the international, federal and state levels, including actions by the FDA; [and] . . . domestic or international litigation developments, government investigations, tax disputes or otherwise; and potential impairment of our investments[.]

This risk warning, too, was plainly a generic catch-all provision not tailored to Altria's actual known legal risks.

52.    The 2Q19 10-Q also contained substantively the same representations as quoted in ¶¶ 37-38 above, except that, as with the 1Q19 10-Q, the 2Q19 10-Q clarified that Altria had received the FDA letter at issue in February 2019, rather than February 2018, and excluded any representation that Altria would continue discussions with the FDA.

53.    Appended as exhibits to the 2Q19 10-Q were signed SOX certifications wherein the Individual Defendants certified that "the [2Q19 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "the information contained in the [2Q19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

54.    The above statements identified in ¶¶ 50-53 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Altria had conducted insufficient due diligence into JUUL prior to the Company's $12.8 billion investment, or 35% stake, in JUUL; (2) that Altria consequently failed to inform investors, or account for, material risks associated with JUUL's products and marketing practices, and the true value of JUUL and its products; (3) that, as a result of the foregoing, as well as mounting public scrutiny, negative publicity, and governmental pressure on e-vapor products and on JUUL, Altria's investment in JUUL was reasonably likely to have a material negative impact on the Company's reputation and operations; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

55.     On August 29, 2019, the *Wall Street Journal* reported that the FTC was investigating whether JUUL used influencers and other marketing practices to appeal e-cigarettes to minors.

56.     On this news, Altria's stock price fell $1.60 per share, or 3.49%, to close at $44.25 per share on August 29, 2019.

57.     Additionally, on August 30, 2019, both the FDA and the CDC announced that they were collaborating to investigate e-cigarette related cases of illnesses and "working tirelessly to investigate the distressing incidents of severe respiratory disease associated with use of e-cigarette products."

58.     On this news, Altria's stock price fell an additional $0.51 per share, or 1.15%, to close at $43.74 per share on August 30, 2019—a total loss of $2.11 per share, or 4.6%, since closing at $45.85 per share two trading days earlier on August 28, 2019.

59.     On September 11, 2019, news sources reported that the Trump administration was preparing a ban on flavored e-cigarettes as federal agencies probe an outbreak of a lung problem that killed at least six people and reportedly led to the sickness of hundreds of others.  President Trump and U.S. Health Secretary Azar reportedly both confirmed that a ban is possible after the vaping issues are investigated.

60.     On September 12, 2019, during after-market hours, *Reuters* reported that, "[w]ithin weeks, New Jersey could become the latest state to restrict e-cigarette use, with the governor on Thursday launching a task force to find ways to curb vaping, linked by U.S. health officials to hundreds of respiratory illnesses and a half-dozen deaths."  Additionally, that same day, the CDC reported that as of September 11, 2019, 380 confirmed cases, and probably cases

of lung disease associated with vaping, had been reported by thirty-six states and the U.S. Virgin Islands, with six total deaths confirmed in six states.

61.     On this news, Altria's stock price fell $2.45 per share, or 5.51%, to close at $42.01 per share on September 13, 2019.

62.     On September 23, 2019, during after-market hours, news sources began reporting that federal prosecutors in California were conducting a criminal probe into JUUL.

63.     Finally, on September 25, 2019, Altria issued a press release announcing that Philip Morris had called off discussions of a $200 billion merger with Altria due to scrutiny of the vaping industry and the Company's 35% stake in market leader JUUL, which had announced the same day that it was the subject of another federal investigation.  JUUL also announced its CEO would step down and the firm would stop all advertising in the U.S.

64.     On this news, Altria's stock price fell an additional $0.17 per share, or 0.42%, to close at $40.56 per share on September 25, 2019—a total loss of $0.32 per share, or 0.78%, since closing at $40.88 per share two trading days earlier on September 23, 2019.

65.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Altria securities between October 25, 2018 and September 24, 2019, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their

immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

67.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Altria's common shares actively traded on the NYSE.   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.   Millions of Altria common stock were traded publicly during the Class Period on the NYSE.   Record owners and other members of the Class may be identified from records maintained by Altria or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

68.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

69.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

70.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Altria; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

71.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

72.     The market for Altria's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Altria's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Altria's securities relying upon the integrity of the market price of the Company's securities and market information relating to Altria, and have been damaged thereby.

73.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Altria's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Altria's business, operations, and prospects as alleged herein.

74.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Altria's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

75.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

76.     During the Class Period, Plaintiff and the Class purchased Altria's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## **SCIENTER ALLEGATIONS**

77.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Altria, their control over, and/or receipt and/or modification of Altria's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Altria, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

78.     The market for Altria's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Altria's securities traded at artificially inflated prices during the Class Period.  On October 30, 2018, the Company's share price closed at a Class Period high of $65.87 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Altria's securities and market information relating to Altria, and have been damaged thereby.

79.     During the Class Period, the artificial inflation of Altria's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Altria's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Altria and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the

Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

80.     At all relevant times, the market for Altria's securities was an efficient market for the following reasons, among others:

(d)     Altria shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(e)     As a regulated issuer, Altria filed periodic public reports with the SEC and/or the NYSE;

(f)     Altria regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(g)     Altria was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

81.     As a result of the foregoing, the market for Altria's securities promptly digested current information regarding Altria from all publicly available sources and reflected such information in Altria's share price. Under these circumstances, all purchasers of Altria's securities during the Class Period suffered similar injury through their purchase of Altria's securities at artificially inflated prices and a presumption of reliance applies.

82.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

83.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Altria who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

84.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

85.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Altria's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

86.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Altria's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

87.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Altria's financial well-being and prospects, as specified herein.

88.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a

course of conduct as alleged herein in an effort to assure investors of Altria's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Altria and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

89.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

90.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such

defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Altria's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

91. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Altria's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Altria's securities during the Class Period at artificially high prices and were damaged thereby.

92. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Altria was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Altria securities, or,

if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

93.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

94.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

95.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

96.     Individual Defendants acted as controlling persons of Altria within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

97.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

98.     As set forth above, Altria and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: December 2, 2019   **GLANCY PRONGAY & MURRAY LLP**

     By: <u>*s/ Lesley F. Portnoy*</u>
     Lesley F. Portnoy (LP-1941)
     230 Park Ave., Suite 530
     New York, New York 10168
     Telephone: (212) 682-5340
     Facsimile: (212) 884-0988
     lportnoy@glancylaw.com

      -and-

     Lionel Z. Glancy
     Robert V. Prongay
     Charles H. Linehan
     Pavithra Rajesh
     1925 Century Park East, Suite 2100
     Los Angeles, CA 90067
     Telephone:  (310) 201-9150
     Facsimile:   (310) 201-9160

     *Attorneys for Plaintiff Patrick F. Cipolla*

## SWORN CERTIFICATION OF PLAINTIFF


## ALTRIA GROUP, INC. SECURITIES LITIGATION


I, Patrick F. Cipolla, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I am duly authorized to institute legal action against Altria Group, Inc. and other defendants.

3.      I did not purchase the Altria Group, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

4.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

5.      My transactions in Altria Group, Inc. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

6.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:


7.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.


I declare under penalty of perjury that the foregoing are true and correct statements.


DocuSigned by:

*Patrick F. Cipolla*

B5E9FC43B7424EE

11/22/2019

_____          _____

Date                                              Patrick F. Cipolla

**Patrick F. Cipolla's Transactions in Altria Group, Inc. (MO)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 12/12/2018 | Bought | 2,000 | $53.7300 |
| 12/12/2018 | Bought | 1,000 | $53.2900 |
| 12/12/2018 | Sold | -400 | $53.7325 |
| 1/24/2019 | Bought | 75 | $42.6200 |
| 6/17/2019 | Sold | -400 | $51.0900 |